**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
JAMES O. BOLDEN,                )
                                )
            Plaintiff,          )
                                )        Civ. No. 04-1905(EGS)
        v.                      )
                                )
DONALD C. WINTER, Secretary     )
Of the Navy,                    )
                                )
            Defendant.          )
_____)


**MEMORANDUM OPINION**

This case involves a discrimination claim brought under
Title VII and the Rehabilitation Act on the basis of sex, race
and disability.  James O. Bolden ("plaintiff"), a black male with
a claimed disability, alleges that the Secretary of the Navy
("defendant")[1] failed to promote him from GS-11 to GS-12 but
instead promoted a Filipina female employee without a disability.
Defendant alleges that plaintiff was not qualified for the
promotion and that he is not comparable to a female employee who
did receive the promotion.  Pending before the court are the
parties' cross-motions for summary judgment.  This Court **DENIES**

_____

[1] Donald Winter, Secretary of the United States Department of the
Navy, has been automatically substituted for his predecessor
pursuant to Fed. R. Civ. P. 25(d)(1).

1

plaintiff's Motion for Summary Judgment and **GRANTS** defendant's
Cross-Motion for Summary Judgment.


## I.    BACKGROUND

Plaintiff, who represents himself, is a former employee of
the Department of Navy, Bureau of Medicine and Surgery ("BUMED").
Compl. at 3.  Prior to working at BUMED, Bolden worked as an
accountant for the U.S. Department of Justice in the U.S.
Marshals Service and the Community Oriented Policing Services as
well as for the U.S. Soldiers' and Airmen's House.  Compl. at 3-
4.  Plaintiff holds an ABS degree in Business Administration with
an emphasis in accounting.  Compl. at 4.  He was hired on June
18, 2000, as an operating accountant, GS-0510-11, and was
employed by BUMED until June 27, 2003, when he entered into
disability retirement.  *See* Compl. Ex. J (Notification of
Personnel Action).

Steven Sninsky and Robert Andersson[2] were plaintiff's first-
and third-level supervisors, respectively.  Compl. at 3, 5.
While at BUMED, Plaintiff was in a "career ladder" position,
which allows for non-competitive promotion between GS grades 9,
11, and 12.  Def.'s Mem. at 2 (citing sealed Ex. 13, Dep. of
James Bolden at 41).  According to the Navy Merit Promotion

---

[2] Since this litigation has commenced, Robert Anderson has
legally changed the spelling of his surname to Andersson.

Procedures Manual, "employees are given grade-building experience and are promoted without further competition when they demonstrate the ability to perform at the next higher grade level, meet regulatory and qualification requirements, and there is enough work at the full performance level for all employees in the group."  Def.'s Mot. for Summ. J., Ex. 2 at 1.  Vincent Vaccaro, the Navy's Director for Civilian Personnel Programs, stated that promotion is conditioned on an employee meeting the time in-grade requirements and demonstrating the ability to successfully perform the duties and responsibilities of the higher grade level.  *Id.* at Ex. 3 (Aff. of Vincent Vaccaro). Even if an employee has successfully performed at his current level, promotions are not guaranteed, as a supervisor may elect against promotion if s/he feels the employee is not capable of performing successfully at the higher level.  *Id.*

Bolden stated that on June 20, 2000, two days after being hired, he submitted a "Statement of Physical Ability for Light Duty Work" informing the Navy of certain physical limitations. Compl., Ex. B.  It is unclear from the evidence presented whether Bolden's supervisors were aware that he filed this statement.  Andersson testified that Bolden never requested any accommodation related to a disability and that he was unaware that Bolden was disabled.  Def.'s Mot. for Summ. J., Ex. 6 (Aug. 24, 2004 Aff. of Andersson).  Sninsky stated that while he did

3

observe that plaintiff walked with a limp, he was unaware of Bolden's status as disabled.[3]  *Id.* at 10 (Aug. 19, 2004 Dec. of Sninsky).  Sninsky also stated he did not see any impact of Bolden's claimed disability on his ability to do work and that Bolden never asked for any accommodations.  *Id.*

In a performance review of Plaintiff's work from the period of October 1, 2000, through September 30, 2001, plaintiff received a score of "acceptable" indicating his work met all of the critical elements in the review.  Compl., Ex. C.  To attain a rating of "acceptable" according to the BUMED Civil Performance Management Form, all critical elements must be rated as "met." Compl., Ex. C.

The critical elements and standards are defined as:

(1) REGARD FOR QUALITY Completes objectives and work assignments with a focus on outcomes that reflect improvements for internal and external customers.  (2) RESOURCE MANAGEMENT Reduce inefficiencies in the system by planning and goal setting; creating or improving programs, procedures, or systems, displaying persistence and a concern for efficiency by promoting partnering and collaboration among stakeholders.  (3) LEADERSHIP AND MANAGEMENT Seizes the opportunity to advance the vision/mission of Navy Medicine.  Positions self as the leader and strives to ensure that everyone buys into the mission.  (4) DIAGNOSTIC CAPABILITY Seeks information from multiple sources to deal with various situations; is sensitive to the needs, interest, and agendas of others; and, identifies the resolution of issues.  (5) INFLUENCE Uses convincing strategies to

---

[3] Bolden has not clearly stated in his pleadings that he fits the definition of disabled required to sue under the Rehabilitation Act.  For the purposes of Defendant's Motion for Summary Judgment, the Court accepts that Bolden meets the standard.

4

influence individuals or groups to the organization's
views; demonstrates awareness of political sensitivity;
displays concern for image.

Compl., Ex. C.

Plaintiff was "rated" by Sninsky and "reviewed" by
Andersson.  *Id.*  The performance review for October 2000 through
September 2001 states, under the heading of "Strengths &
Accomplishments," that "Mr. Bolden has continued to play an
important role in the daily operations of the Accounting
Division.  Never afraid to get involved in new endeavors, gather
and analyze required information, or think outside of the box,
Mr. Bolden is a valued member of the Accounting Operations
Division team."  *Id.*  Under the heading, "Area(s) of Focus and
Emphasis," the review states that Bolden "worked tirelessly with
[BUMED] codes to develop standards for data collections to meet
other reimbursable billable requirements," "[s]pearheaded the
NAVTRANS led effort to update all BUMED field activity Department
of Defense Address Activity Codes," and "[a]ggressively
researched and reconciled prior year account balances to free up
funds for return to TMA."  *Id.*  Plaintiff was also recognized in
this review for having presented at the summer session of the
NSHS Financial and Material Management Training Course ("FMMTC")
class.  *Id.*  In his performance review for the period of October
1, 2001, through September 30, 2002, Bolden again received an

assessment of "acceptable" as rated by Sninsky and reviewed by
Maureen Queenan-Flores.  *Id.*

In January 2002, approximately eighteen months after
plaintiff commenced work at BUMED, Sninsky submitted the names of
Bolden and his co-worker Jenny Carlos to Andersson for promotion
to the GS-12 level.   Pl.'s Reply and Opp'n, Ex. 1 (email).
Sninsky stated that at the time that he submitted plaintiff's
name, he thought promotion was automatic upon reaching the time-
in-grade requirement and independent of the employee's skill or
ability.  Def.'s Mot. for Summ. J., Exh. 11 (Jan 7, 2008 Aff. of
Sninsky).  He stated that had he known the actual requirements,
he would not have recommended Bolden's promotion to GS-12.  *Id.*
According to Andersson, the same certificate referred Bolden,
Carlos (female of Filipino origin) and Wanda Creech (Black
female) for promotion.[4]  *Id.* at Ex. 6.

Within two or three weeks of recommending Bolden and Carlos
for promotion, Andersson told Sninsky that he wanted both of them
to attend the FMMTC, a twelve-week training in fiscal and
material management.  *Id.* at Ex. 5 (Jan. 7, 2008 Aff. of
Andersson), Ex. 10.  According to Andersson, this course is a
general requirement for new employees and something that he

---

[4] Bolden also compares himself to two other employees who were
promoted:  (1) Jane Cunningham – a white female with no
disability – who was already a GS-12 when she began work at
BUMED; and (2) Raymond Anderson, plaintiff's second-line
supervisor.

viewed as specifically necessary for Bolden to get his skills and performance up to the GS-12 level. *Id.* at Ex. 6 at 3-4. Andersson stated that, in addition to Bolden attending the FMMTC training, he wanted Sninsky to work with Bolden for an additional six months prior to promoting him. *Id.*

In March 2002, plaintiff learned that Carlos had been promoted to GS-12 and inquired with Sninsky as to the status of his own promotion. Pl.'s Reply and Opp'n, Ex. 1. Sninsky informed plaintiff that Andersson wanted him to complete the FMMTC as a "prerequisite to promotion." Def.'s Mot. for Summ. J., Ex. 8 (email). Evidence on the record reflects that Bolden was enrolled in the FMMTC class commencing on July 8, 2002 and ending on September 28, 2002. *Id.* at Ex. 13. Plaintiff did attend a spring 2002 FMMTC for approximately one week but did not return to class. *Id.* at Ex. 10. Bolden claims that he was unable to attend the classes because he had to go on medical leave in early May 2002. Def.'s Mem., Ex. 9.

On April 18, 2002, Plaintiff contacted an Equal Employment Opportunity ("EEO") Counselor at the Department of the Navy. *See* 29 C.F.R. § 1614.105(a)(1). On July 3, 2002, plaintiff filed a formal administrative complaint of discrimination based on race, color, disability, sex, and reprisal. Def's Mot. to Dismiss, Ex. 4 (Formal Complaint of Discrimination). That complaint was dismissed as untimely by the Department of the Navy on August 23,

2002.  *Id.* at Ex. 5 (Aug. 23, 2002 Letter from Isaac Oliver to James O. Bolden).  Plaintiff appealed the dismissal to the Equal Employment Opportunity Commission ("EEOC").  *See Bolden v. England*, Appeal No. 01A30279 (E.E.O.C. Mar. 24, 2004) (Decision). On March 24, 2004, the EEOC reversed the Department of the Navy's determination, and the complaint was remanded to the agency for investigation of the allegations.  *Id.*

The agency sent a letter to plaintiff on June 17, 2004, detailing what issues were accepted for investigation, how "[t]he scope of the investigation will be limited" to these issues, that "the EEO investigator is not authorized to inquire into any other matters," and if plaintiff had other matters he wished to complain about, he had to see an EEO Counselor immediately. Def.'s Mot. to Dismiss, Ex. 7. (Memo. from Chief of Staff to Mr. James O. Bolden, June 17, 2004).  The agency identified two issues that plaintiff complained were evidence of discrimination: (1) Plaintiff alleged that his supervisor discriminated against him when he held up his promotion to GS-12 by imposing additional requirements on him but not on a female co-worker who received her promotion; and (2) Plaintiff alleged that recent scrutiny of his work performance caused him undue stress, tension, and anxiety resulting in him receiving medical treatment and medication.  The EEO counselor acknowledged Bolden's claim that the alleged discrimination was based on race (Black), color

8

(Black), sex (male), reprisal (prior EEO activity), and disability (physical and mental).  Def.'s Mot. to Dismiss, Ex. 7.

The investigation began on August 24, 2004, and concluded on September 30, 2004.  *Id.* at Ex. 8 (Report of Investigation).  The EEO investigator reviewed documents and spoke with plaintiff's supervisors at BUMED and other personnel.  *Id.* at 4-6.  The Report of Investigation, date stamped October 13, 2004, states that "[o]n September 10, 2004,[plaintiff] was provided an opportunity to respond to Mr. Andersson's testimony.  But the certified mail to [plaintiff] was unclaimed, and he also failed to respond to the correspondence sent to him by first class mail on the same date."  *Id.* at 7.

On November 3, 2004,plaintiff filed this lawsuit, prior to receiving a final decision from the agency.  Plaintiff's complaint, which he amended on June 29, 2005, raised a number of issues and claims against a number of defendants in this matter. On March 27, 2006, this Court, ruling on parties' cross-motions for summary judgment, dismissed all of plaintiff's claims except for his Title VII and Rehabilitation Act of 1973 discrimination claim on the basis of race, sex, and disability (physical and mental) based on the Navy's failure to promote him from GS-11 to GS-12.  Mem. Op. & Order (March 27, 2006).

9

## II.   DISCUSSION

## A.   Standard of Review

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991-92 (D.C. Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact.  *See Celotex*, 477 U.S. at 323.

In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  Moreover, if the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment

10

may be granted." *Anderson*, 477 U.S. at 249-50 (internal
citations omitted).

Although summary judgment "must be approached with special
caution in discrimination cases, a plaintiff is not relieved of
her obligation to support her allegations by affidavits or other
competent evidence showing that there is a genuine issue for
trial." *Morgan v. Fed. Home Loan Mortgage Corp.*, 172 F. Supp. 2d
98, 104 (D.D.C. 2001), *aff'd*, 328 F.3d 647 (D.C. Cir. 2003)
(citations and internal quotation marks omitted); *see also*
*Marshall v. James*, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (noting
that special caution "does not eliminate the use of summary
judgment in discrimination cases") (citing cases).  The court
views summary judgment motions in discrimination cases with the
appropriate caution, but the court cannot overlook a plaintiff's
failure to submit evidence that creates a genuine factual dispute
or entitlement to judgment as a matter of law.  *See Wada v.
Tomlinson*, 517 F. Supp. 2d 148, 180-81 (D.D.C. 2007) (finding
that even though the "special standard" applied to motions for
summary judgment in employment discrimination cases is "more
exacting, it is not inherently preclusive" of a grant of summary
judgment in favor of defendants).

**B.   *McDonnell Douglas* Framework**

Plaintiff claims discrimination under Title VII and the
Rehabilitation Act.  Title VII makes it unlawful for a federal

government employer to discriminate "based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a). The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability" may be discriminated against by a federal agency "solely by reason of her or his disability."  29 U.S.C. § 794(a).

Where there is no direct evidence of discrimination, the court applies the *McDonnell Douglas* burden-shifting framework under which the plaintiff must first establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  Disability discrimination claims brought pursuant to the Rehabilitation Act are subject to the same *McDonnell Douglas* burden-shifting standard as Title VII claims. *See Rosell v. Kelliher*, 468 F. Supp. 2d 39, 44 (D.D.C. 2006). Accordingly, the Court analyzes all discrimination claims together.  Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a *prima facie* case by a preponderance of the evidence.  *See McDonnell Douglas*, 411 U.S. at 802; *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002).

In most cases, to make out a *prima facie* case of discrimination, a plaintiff must demonstrate that: "(1) [he] is a member of a protected class; (2) [he] has suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  *Czekalski v. Peters*, 475 F.3d

12

360, 364 (D.C. Cir. 2007) (quoting George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005)); *Stella*, 284 F.3d at 145.  In certain circumstances, however, such as where the plaintiff sought only an increase in grade and pay and not promotion to a vacant position, the D.C. Circuit has found that "'the traditional *McDonnell Douglas* test does not fit'" and the Court therefore "'adjust[s] the *McDonnell* [*Douglas*] formula to ask whether a similarly situated person . . . requested and received the benefit [plaintiff] sought.'"  *Taylor v. Small*, 350 F.3d 1286, 1294 (D.C. Cir. 2003) (quoting *Cones v. Shalala*, 199 F.3d 512, 517 (D.C. Cir. 2000)).  In *Taylor*, the D.C. Circuit clearly outlined what is required in order for a plaintiff to make out a *prima facie* case of discriminatory refusal to promote where the plaintiff is only claiming entitlement to an increase in pay or grade based on current responsibilities rather than promotion to a vacant position.  "[T]he plaintiff must show that she sought and was denied a promotion for which she was qualified, and that 'other employees of similar qualifications . . . were indeed promoted at the time the plaintiff's request for promotion was denied.'"  *Id.* (quoting *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C. Cir. 1981)).

Should the plaintiff succeed in making out a *prima facie* case, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its actions.

*McDonnell Douglas*, 411 U.S. at 802.  Defendant only has the
burden of production and "need not persuade the court that it was
actually motivated by the proffered reasons."  *Tex. Dep't of
Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

The plaintiff must then demonstrate that the employer's
stated reason was pretextual and that the true reason was
discriminatory.  *Stella*, 284 F.3d at 144.  According to *Aka v.
Washington Hospital Center*, 156 F.3d 1284 (D.C. Cir. 1998), the
pretextual analysis proceeds by considering:

> whether the jury could infer discrimination from the
> combination of (1) the plaintiff's *prima facie* case;
> (2) any evidence the plaintiff presents to attack the
> employer's proffered explanation for its actions; and
> (3) any further evidence of discrimination that may be
> available to the plaintiff (such as independent
> evidence of discriminatory statements or attitudes on
> the part of the employer) or any contrary evidence that
> may be available to the employer (such as evidence of a
> strong track record in equal opportunity employment).

*Id.* at 1289.  "The ultimate burden of persuading the trier of
fact that the defendant intentionally discriminated against the
plaintiff remains at all times with the plaintiff."  *Reeves v.
Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 143 (2000) (quoting
*Burdine*, 450 U.S. at 253).  "As courts are not free to second-
guess an employer's business judgment," a plaintiff's mere
speculations are "insufficient to create a genuine issue of fact
regarding [an employer's] articulated reasons for [its decisions]

and avoid summary judgment." *Branson v. Price River Coal Co.*, 853
F.2d 768, 772 (10th Cir. 1988).

## C.    Failure to Promote

To survive summary judgment in an action for failure to
promote, a plaintiff must show (1) that he sought and was denied
a promotion, (2) for which he was qualified, and (3) that another
employee of similar qualifications was promoted at the time the
plaintiff's request for promotion was denied. *Taylor*, 350 F.3d
at 1294.  Bolden has demonstrated the first element -- that he
sought and was denied a promotion -- but he has not clearly
demonstrated the latter two elements.

Plaintiff alleges discrimination on account of his race,
sex, and disability based on the Navy's failure to promote him
from the GS-11 level to GS-12 in 2002.  Plaintiff claims that he
met the requirements to receive a career promotion to a GS-12
level but was denied that promotion.  Compl. at 5.  Plaintiff
also argues that he was qualified for the promotion because he
was given responsibility for the GS-13 level functions of Tom
Bezila.  Pl.'s Reply and Opp'n at 3.  Plaintiff points to his
performance evaluations, which praise his involvement in the
division, his tireless work, his aggressive research, and his
spearheading of a BUMED accounting initiative.  Compl., Ex. C.
Plaintiff further claims that similarly situated white, female

and/or non-disabled employees were promoted under different standards of performance.  Pl.'s Reply and Opp'n at 7.

Defendant argues that plaintiff cannot make out a *prima facie* case of discrimination because he was neither qualified for a career promotion to the next higher grade level nor can he point to similarly situated employees who were promoted when he was not.  Def.'s Mem. at 1.  Defendant notes that the determination of an employee's qualifications for promotion is a personnel decision in the discretion of an employer.  *See* 5 U.S.C. § 7106.  Defendant maintains that the fact that Bolden had met the time-in-grade requirement did not automatically qualify him for a promotion.

### 1. Plaintiff's Qualifications

In order for Bolden to make out his *prima facie* case of discrimination, he must demonstrate that he was qualified to be promoted to the GS-12 level.  "An essential requirement for a *prima facie* case of discrimination based on failure to promote is plaintiff's qualification for the promotion position.  A career-ladder promotion is contingent on the employee's ability to perform at the next higher grade."  *Nails v. England*, 311 F. Supp. 2d 116, 122 (D.D.C. 2004) (internal citation omitted).  According to the Merit Promotion Procedures Manual, "[e]mployees are not entitled to promotion at any time and no promise of promotion is implied by selection to a career ladder position."

16

Def.'s Mot. for Summ. J., Ex. 2.  The Manual states that an employee in a career-ladder position may not be promoted "due to inability to perform at the higher grade level, within a reasonable amount of time."  *Id.*

Defendant does not dispute that plaintiff met the one-year time-in-grade to be eligible for a promotion.  Defendant does dispute, however, that plaintiff was qualified for a promotion. Specifically, defendant argues that plaintiff failed to meet the performance requirements for a promotion to a GS-12 because he was lacking "in-depth knowledge of Navy Medical Accounting and of BUMED Financial Management Organization" and produced errors stemming from "unfamiliarity with BUMED accounting and plaintiff's reluctance to ask others for assistance and be a team player, all of which are necessary for a GS-12 employee of an accounting team." Def.'s Mem. at 12 (citing Ex. 5 6, 8, 17). Andersson, who decided whether or not Bolden was promoted, testified that "[he] did not think that [Bolden] was performing at the GS-11 level.  There were a lot of errors in his work, and unfamiliarity, and questioning of others.  It was clear that he did not understand and was too proud to ask questions." Def.'s Mot. for Summ. J., Ex. 6 at 3.  Additionally, Andersson noted that plaintiff often submitted his work directly to him rather than following the chain of command.  *Id.* at 4.

17

Plaintiff has not shown that his qualification required his promotion; he failed to demonstrate to his supervisors that he was able to perform at the GS-12 level.  The evidence on the record indicates that Bolden's first level supervisor, Sninsky, "frequently noted errors in plaintiff's work, some of which were basic, and did not feel that plaintiff had the understanding and familiarity with the BUMED accounting system or organization necessary to perform at the GS-12 level." *Id.* at 12. Specifically, Sninsky sent an e-mail to plaintiff on April 27, 2002, correcting errors in his work and stating that "this is a performance issue which you need to address immediately;" on May 3, 2002, Sninsky sent another e-mail to Bolden correcting an error and stating that "[t]his is another simple line of accounting error that needs to be corrected."  Def.'s Reply and Opp'n at 10 (quoting Exs. 2, 3).  There is also evidence on the record that plaintiff's failure to complete the FMMTC training course -- which was meant to bring his work-product and understanding of accounting up to the level of a GS-12 -- was a major factor in his failure to secure a promotion from defendants.  *Id.* at 10.  While plaintiff has produced evidence that he attended other training courses while employed by BUMED, he does not contest that he elected not to attend the FMMTC course, as required of new employees.  *Id.* at 7.

18

Plaintiff's performance evaluations do suggest that he was
performing well and meeting all of the requirements for his
position.  Bolden was also given increased responsibility,
including being reassigned the tasks of a GS-13 employee, an
indication that he may have been performing work that was above
his GS-11 status.  In *Kilby-Robb v. Spellings*, 522 F. Supp. 2d
148 (D.D.C. 2007), however, the court found that a plaintiff
failed to establish that she was qualified for a promotion based
solely upon her responsibilities:

> Even assuming that she performed all of the duties she
> claims to have performed as Acting Team Leader of the
> PIRC team -- a matter that is contested by [Defendant]
> -- plaintiff has not demonstrated that such duties
> alone were sufficient to support a promotion in grade
> or salary.  Plaintiff presented an overwhelming number
> of exhibits with her opposition, but the bulk of her
> exhibits were meant "to demonstrate to the court the
> volume of work she was required to perform."  Mere
> volume of work, however, does not establish that a
> grade promotion was warranted.

*Id.* at 157 (citation omitted).  Bolden has similarly produced
evidence that he had a large volume of work and had taken on
duties of an employee of higher grade.  This, however, is
insufficient because plaintiff does not demonstrate that "duties
alone were sufficient to support a promotion."  *Id.*

In *Wiley v. Glassman*, 511 F.3d 151 (D.C. Cir. 2007), the
D.C. Circuit found that a plaintiff failed to offer evidence that
her position deserved to be reclassified at a higher grade due to
an accretion of more duties and responsibilities.  *See id. at*

19

156.   The D.C. Circuit noted that the plaintiff offered "virtually nothing to establish what her original duties as a GS-12 International Radio Broadcaster had been, what duties she was performing when she was denied a promotion, and what responsibilities the GS-13 position commonly entailed."  *Id.* at 156-57.  As in *Wiley*, Bolden has not specifically stated what his duties were or what his new duties would be in order to demonstrate that he was in fact qualified for promotion to GS-12. Bolden points to his "acceptable" ratings in his performance evaluations to indicate that he was qualified for the GS-12 position, but these are only relevant to his GS-11 abilities as that is what they evaluate, and do not clearly show that he was able to perform the tasks of the next level.

In *Luster v. Freeman*, 1980 WL 246 (D.D.C. Oct. 27, 1980), a plaintiff "clearly established" a *prima facie* of discrimination when he was not promoted although he had been eligible for promotion for a significant amount of time, had "many successful years of service," and had received two previous merit promotions.  *Id*. at *6.  The only negative evaluations the plaintiff received were close in time to associations with another employee who filed a discrimination claim raising suspicions of racially motivated reprisals.  *Id*.  Based on this evidence, the court concluded that the preponderance of the evidence showed that "but for racial discrimination against him,

20

he would have been promoted to the GS-9 level." *Id.* at *7.  In
contrast to *Luster*, Bolden was only in service at BUMED for the
minimum time required to be promoted to GS-12, and there is
evidence on the record that his supervisors felt he would benefit
from extended time to meet the requirements of work at the GS-11
level.  Bolden does not present compelling evidence that he was
definitively qualified for promotion such that he would have been
promoted but for discrimination by BUMED.

   **2.   Similarly Situated**

   Neither does Plaintiff satisfy the final part of the *prima
facie* test outlined in *Taylor*.  Plaintiff must demonstrate that
other employees of similar qualifications -- who do not exhibit
any of his claimed protected traits -- were promoted at the time
his request for promotion was denied.  To be similarly situated a
"plaintiff . . . must demonstrate that all of the relevant
aspects of [his] employment situation were 'nearly identical' to
those of [his comparables]."  *Holbrook v. Reno*, 196 F.3d 255, 261
(D.C. Cir. 1999) (citation and internal quotation marks omitted).

   In *Taylor*, the plaintiff failed to demonstrate that she was
similarly situated to other employees receiving promotions.
*Taylor*, 350 F.3d at 1295.  The plaintiff there pointed to four
white employees promoted from GS-11 to GS-12, but the evidence
demonstrated that three of the employees had over ten years in
grade GS-11 prior to promotion and the other was a supervisory

21

archivist in a GS-11/GS-12 career-ladder position.  *Id.*
Similarly, in *Wiley*, the D.C. Circuit held that the plaintiff had
produced nothing to rebut the "clear evidence" offered by the
defendant that the employee to whom plaintiff sought to compare
herself had experienced an increase in responsibilities over time
which justified his promotion.  *Wiley*, 511 F.3d at 157.

    Plaintiff has failed to establish that his employment
situation was similar in all relevant regards to those with whom
he seeks comparison, the standard in the D.C. Circuit.  *See*
*Holbrook*, 196 F.3d at 261.  Plaintiff points to three individuals
who he claims were similarly situated to him and who were
promoted when he was not:  Jane Cunningham, Raymond Anderson, and
Jenny Carlos.  None of the individuals to whom Bolden compares
himself to are similarly situated.  Jane Cunningham -- a white
female with no disability -- was already a GS-12 when she began
work at BUMED; she was also in a different department and had a
different first-line supervisor than Bolden.  *See* Def.'s Mem. at
13 (citing Ex. 6 at 6).  Raymond Anderson was plaintiff's second-
line supervisor and thus also not similarly situated to him.  *Id.*

    The only *potentially* comparable employee who received a
promotion was Jenny Carlos -- a Filipina female with no
disability.  Although Carlos worked in the same department as
Bolden and was hired at the same time, defendant notes that her
previous experience at BUMED and her exemplary record, including

22

being awarded "Civilian of the Quarter" and "Civilian of the
Year" in 2001, distinguishes her qualifications from those of
plaintiff.  Carlos had previously worked at BUMED as an
accounting technician for fifteen months prior to returning in
2000 as a GS-11 accountant.  At the time that both Bolden and
Carlos were considered for promotion, she had worked at BUMED
twice as long as plaintiff.  Furthermore, Carlos did attend the
same FMMTC class in which the plaintiff declined to participate.
Though she was unable to complete the course due to a family
medical emergency, according to Andersson, her non-completion of
the course was not a bar to her promotion because she had already
demonstrated an ability to work at the GS-12 level.  Def.'s Reply
and Opp'n at 8.

Sninsky, who supervised both Carlos and Bolden, testified
that "Bolden was not a top performer.  He was doing basic work,
such as Coast Guard billing and not policy type work or anything
else which was considered more advanced and would have required
more skill."  Def. Mot. for Summ. J., Ex. 11 7.  In comparison,
"[Carlos] was a much better performer than Bolden.  When there
were new projects in the office, Jenny Carlos would frequently
volunteer, whereas Bolden would not want to be involved."  *Id.* at
Ex. 11-8.

Plaintiff attaches a number of exhibits to his pleadings in
an effort to show that he was similarly situated to Carlos;

23

however, the evidence neither supports his arguments nor contradicts the key differences pointed to by defendants between plaintiff and his alleged comparators as required to rebut defendant's non-discriminatory explanation.

## III. CONCLUSION

Bolden has not met his burden of demonstrating a *prima facie* case of employment discrimination under *Taylor*.  Accordingly, plaintiff's Motion for Summary Judgment is **DENIED**; defendant's cross-motion for Summary Judgment is **GRANTED**.  An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:**   **Emmet G. Sullivan**
         **United States District Judge**
         **March 16, 2009**